Hokenstrom v. Warden                    04-CV-078-SM  09/28/05
                    UNITED STATES DISTRICT COURT

                    DISTRICT OF NEW HAMPSHIRE


Kevin Hokenstrom,
        Petitioner

        v.                              Civil No. 04-cv-078-SM
                                        Opinion No. 2005 DNH 136
Warden, New Hampshire
State Prison,
        Respondent

                        **O R D E R**


        Kevin Hokenstrom challenges his state conviction and

sentence in a petition for a writ of habeas corpus.  18 U.S.C. §

2254.  Preliminary review by the Magistrate Judge reduced

Hokenstrom's petition to seven claims.  Before the court are: (1)

petitioner's motion for de novo review of the Magistrate Judge's

dismissal of Claim 5; (2) respondent's motion for summary

judgment on all claims; and (3) petitioner's motion for summary

judgment on Claim 1, which includes a request that the court

"waive" his remaining claims, without prejudice, in the event he

prevails on Claim 1.  For the reasons given below, the Magistrate

Judge's dismissal of Claim 5 is affirmed; respondent's motion for

summary judgment is granted, and petitioner's motion for partial

summary judgment is, necessarily, denied.

**Background**

Hokenstrom was convicted in the New Hampshire Superior Court
of aggravated felonious sexual assault, felonious sexual assault,
and attempted felonious sexual assault, for abusing his pre-teen
stepdaughter.

Hokenstrom's habeas petition consists of seven properly
exhausted claims including: prosecutorial misconduct based upon
an alleged solicitation of false testimony in violation of his
right to due process (Claim 1); ineffective assistance of
counsel, resulting in the admission of hearsay evidence at trial
in violation of his right of confrontation (Claim 2); ineffective
assistance of counsel, based upon trial counsel's alleged failure
to secure exculpatory evidence (Claim 3); denial of his right to
confront and cross-examine the victim, for impeachment purposes,
with regard to a juvenile delinquency petition for theft, filed
shortly before trial (Claim 6); alteration of the trial
transcripts in violation of his right to due process (Claim 8);
judicial misconduct in limiting the duration of the trial, in
violation of his right to a fair trial (Claim 9); and ineffective

assistance of counsel in violation of his Sixth Amendment rights (Claim 10).

The procedural background is set out in detail in the Magistrate Judge's order (document no. 7).  In short, petitioner appealed his state conviction to the New Hampshire Supreme Court, but briefed only one of the seven issues raised in his notice of appeal.  The other six issues were deemed forfeited.  See State v. Hokenstrom, No. 2001-165, slip op. at 3 (N.H. Feb. 14, 2003) (hereinafter "Hokenstrom I") (citing State v. Brewster, 147 N.H. 645, 651 (2002)).  Subsequently, petitioner filed a motion for new trial, which was denied by written order after a hearing.  He appealed that denial.  The New Hampshire Supreme Court declined the appeal.  Of the seven exhausted claims identified by the Magistrate Judge, Claim 6 was adjudicated on the merits by the New Hampshire Supreme Court, while Claims 1, 2, 3, 8 and 10 were adjudicated on the merits by the Superior Court in its denial of petitioner's motion for a new trial.  Claim 9 was raised in petitioner's first notice of appeal, but deemed forfeited.

**The Legal Standard**

Passage of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), has significantly limited the power of the federal courts to grant habeas corpus relief to state prisoners.  A federal court may disturb a state conviction only when: (1) the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2); or (2) the state court's resolution of the issues before it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); <u>see also</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 399 (2000).

Regarding the distinction between decisions "contrary to" clearly established federal law and those involving an "unreasonable application" of federal law, the United States Supreme Court has stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme]

4

> Court on a question of law or if the state court
> decides a case differently than [the Supreme] Court has
> on a set of materially indistinguishable facts.  Under
> the "unreasonable application" clause, a federal habeas
> court may grant the writ if the state court identifies
> the correct governing legal principle from [the
> Supreme] Court's decisions but unreasonably applies
> that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13.


Of course, "AEDPA's strict standard of review only applies to a 'claim that was adjudicated on the merits in state court proceedings.'"  Norton v. Spencer, 351 F.3d 1, 5 (1st Cir. 2003) (quoting Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001)).  "If a claim was not adjudicated on the merits in a state court proceeding, then the issue is reviewed de novo."  Norton, 351 F.3d at 5 (citation omitted).


Here, AEDPA's strict standard of review applies to all of Hokenstrom's claims, except Claim 9, which was procedurally defaulted by petitioner's failure to brief it on direct appeal to the New Hampshire Supreme Court.  Respondent contends that Claims 1, 2, 3, and 8 were procedurally defaulted, because petitioner failed to raise them in his direct appeal to the New Hampshire

Supreme Court.  While petitioner did, in fact, fail to raise
those claims in his direct appeal, he did present them to the
Superior Court in his post-appeal motion for a new trial, and the
Superior Court adjudicated those claims (and claim 10), seemingly
on the merits.  Petitioner also filed a second notice of appeal
to the New Hampshire Supreme Court, from the denial of his motion
for new trial.  The New Hampshire Supreme Court declined that
appeal.  Because the issues were decided on the merits (albeit
with little helpful discussion), AEDPA's deferential standard of
review applies.  However, in the end, under either a deferential
or <u>de novo</u> standard, petitioner's claims are not meritorious.


**Discussion**

<u>A. Dismissal of Claim 5</u>

In Claim 5, petitioner asserts that his motion to dismiss
the indictment on speedy trial grounds was denied under "false
pretenses."  Specifically, he argues that the trial court barred
him from testifying at the hearing on his motion, and then denied
the motion because he failed to testify.  As the Magistrate Judge
correctly determined, petitioner has misstated the facts.  The
record discloses that the trial judge did not bar petitioner from

testifying.  Rather, the judge barred the state from calling petitioner as a witness against his will, at the insistence of his own counsel.  Petitioner was not barred from testifying; he could have testified if he wished to do so, but apparently did not.  Because the Magistrate Judge correctly dismissed Claim 5, his order of dismissal is affirmed.

B. Claim 1

In paragraphs 5-15 and 60-62 of his state motion for a new trial, petitioner developed the following argument: (1) the victim testified that she had been digitally penetrated by petitioner dozens of times each night over the course of thirty consecutive nights; (2) a medical expert testified that the victim's hymen was intact; and (3) because the prosecutor knew of the expert testimony that the victim's hymen was intact, he necessarily suborned perjury by eliciting testimony from the victim that she had been digitally penetrated on multiple occasions.  In its order denying petitioner's motion for a new trial, the court explained:

> Defendant did not provide the court with so much as a scintilla of evidence that State's counsel knew or even suspected that any testimony was perjurious.  Even

7

> assuming defendant's claim that the testimony was false
> is correct (and the court has substantial doubt that it
> is), the function of determining credibility rests with
> the jury as trier of fact.  Without some colorable
> claim that the state <u>knew</u> it was presenting false
> testimony, defendant's claim of prosecutorial
> misconduct fails.

<u>State v. Hokenstrom</u>, Nos. 93-S-520-521 & 523, slip op. at 1 (N.H.

Super. Ct. (Merrimack County) Sept. 24, 2003) (hereinafter

"<u>Hokenstrom II</u>").  In his habeas petition, Hokenstrom frames

Claim 1 as follows: "Conviction obtained by prosecution's

repeated soliciting of testimony known to be false."  As framed

by the Magistrate Judge, Claim 1 consists of "a claim of

prosecutorial misconduct whereby the prosecution repeatedly

solicited false testimony, presumably in violation of

[petitioner's] right to due process of law."


    In his motion for summary judgment, petitioner explains that

the allegedly false testimony consisted of the victim's statement

that he had repeatedly inserted an entire finger, all the way

into her vagina.  This matters, in his view, because "[t]here is

no doubt that the difference in the N.H. State statute which can

define 'penetration' as simply a finger between the labia of the

outer genitalia and the penetration described to the jury is

8

monstrous." (Pet'r's Mot. Summ. J. at 9.)  In other words,
petitioner argues that the prosecutor knowingly solicited false
testimony describing a particularly "bad" version of the crime he
had been charged with, in hopes of inflaming the jury which, in
his view, would have been less outraged by testimony about a
"lesser" form of unlawful penetration.

   The trial record does not support petitioner's argument.
The victim's testimony was not inconsistent with the testimony
offered by the medical expert.  The victim spoke of multiple
incidents, but did not say that petitioner inserted an entire
finger or that he inserted his finger "all the way" into her
vagina.  Rather, she testified that "he would stick his finger
inside my vagina" (Trial Tr. I at 40), that "he touched my
vagina" (Trial Tr. I at 49), and that "he would just stick his
finger in my vagina and then take it out and lick it and put it
back in and repeat the process" (Trial Tr. I at 50).  And, as Dr.
Gladstone testified, the absence of physical injury does not mean
that a child has not been sexually assaulted.  (Trial Tr. II at
15-16.)  Because the absence of physical injury to the victim's
hymen is not inconsistent with her claim to have been sexually

assaulted on multiple occasions, and because petitioner has offered no other basis for concluding that the prosecutor "knew" that the victim's testimony was "false."  The state court's adjudication of this claim has not been shown to be either contrary to nor an unreasonable application of clearly established federal law as determined by the Supreme Court.  And, alternatively, under a de novo standard, the claim is entirely without merit.

C. Claim 2

    In paragraphs 35-38 of his post-appeal motion for a new trial, petitioner argued that his Sixth Amendment right of confrontation was violated by the admission of hearsay evidence concerning an interaction between himself and the victim's grandparents.  In his habeas petition, he accuses the prosecutor of "suborning hearsay."  The Superior Court did not discuss the hearsay issue as such, but at the motion hearing, petitioner did address his alleged interaction with the victim's grandparents. As framed by the Magistrate Judge, Claim 2 asserts that petitioner's "constitutional right to confrontation was violated when defense counsel allowed into evidence third party testimony,

thus permitting his conviction to be obtained through the use of hearsay evidence."

Petitioner's Claim 2 lacks merit for a number of reasons. First, the issue was raised in petitioner's motion for a new trial, understandably, as one presenting a claim of constitutionally defective representation.  That is understandable since no objection was interposed when the alleged hearsay was admitted into evidence at trial, and no confrontation clause issue was raised by petitioner on direct appeal to the New Hampshire Supreme Court.  Had the motion for a new trial presented the claim as one asserting deprivation of rights under the Confrontation Clause, the state courts would likely have rejected it on procedural default grounds.  In any event, petitioner's claim fails as well under his ineffective assistance of counsel classification.

Petitioner says his trial counsel should have acted to keep identified hearsay evidence from being admitted against him, and counsel's failure to do so prejudiced him in that he was denied his constitutional right to confront and cross examine the

witnesses against him.  Under the New Hampshire Rules of
Evidence, and subject to certain exceptions, "'[h]earsay' is a
statement, other than one made by the declarant while testifying
at the trial or hearing, offered in evidence to prove the truth
of the matter asserted."  N.H. R. EVID. 801(c).  According to
petitioner, inadmissable hearsay was admitted in the following
direct testimony by the victim, which was solicited without
objection:

> Q.   And then what happened; did you stay at grandma's?
>
> A.   No.  We went back to my house.
>
> Q.   Who was there?
>
> A.   Kevin and my mom and my grandfather and my
>      grandmother and me.  We wanted to have – my
>      grandparents thought it would be best if we all
>      just had a conversation together.  So we sat down
>      and tried to tell my mom and I tried to explain
>      that what I was doing was telling the truth.
>
> Q.   How old were you, Lisa?
>
> A.   I was around eight.
>
> Q.   Did he say anything?
>
> A.   He just kept calling me a liar and my mom believed
>      him.  My grandparents believed him.  (Witness
>      crying).

(Trial Tr. I at 58.)  In his petition, Hokenstrom specifically objects to the following testimony by the victim: "He just kept calling me a liar[.]  My grandparents believed him."  He says he was denied his right of confrontation because the grandparents did not also testify about the family conversation described by the victim.  However, the quoted testimony contains no out-of-court statement by the grandparents.  The only out-of-court statement is that of the petitioner, which constitutes an admission by a party-opponent.  An admission by a party-opponent is, by definition, not hearsay.  <u>See</u> N.H. R. EVID. 801(d)(2). (Moreover, it seems highly unlikely that the prosecution introduced that statement for the purpose of proving the truth of the matter allegedly asserted by petitioner, <u>i.e.</u>, that the prosecution's chief witness – the victim – was a liar.)  Thus, no hearsay issue arose with respect to the first statement identified by petitioner, and counsel did not err in failing to object.

So, too, with regard to the second statement alleged to be hearsay.  The victim's mother testified, without objection, as follows:

Q.   Was there another time that this type of
     discussion took place involving, I believe, Lisa's
     grandparents?

A.   Yes, there was.

Q.   What took place?

A.   Shortly before Kevin left, my parents brought Lisa
     home.  It was on a weekend.  And they came into
     the living room and told Kevin that Lisa was
     afraid to come home and had told them that he had
     touched her and they wanted to know what was going
     on.

Q.   What happened, were you there – you were present
     during the conversation?

A.   Yes.

Q.   And what did he say?

A.   Kevin told my parents the same thing that he had
     told me about the robe.

Q.   What was his demeanor?

A.   He was upset.

Q.   Did he say anything to you specifically?

A.   No.  He was yelling at Lisa after my parents left.
     My parents did not stay, they left.

Q.   Was he yelling at Lisa?

A.   Yes.

(Trial Tr. I at 130-31.) Hokenstrom takes issue with the testimony: "They came into the living room and told Kevin that Lisa was afraid to come home and had told them that he had touched her and they wanted to know what was going on." At the hearing on his motion for a new trial, the thrust of petitioner's argument was not that any particular fact was being proved through out-of-court statements but, rather, that the entire confrontation between him and the victim's grandparents was fabricated by the prosecution on the eve of trial. However, even assuming a properly framed hearsay argument, no inadmissible hearsay was allowed and, as a consequence, petitioner's confrontation rights were not violated and counsel did not err in failing to object.

The testimony petitioner challenges contains two out-of-court statements, i.e., the victim's mother's testimony that the victim's grandparents told Hokenstrom that: (1) "Lisa was afraid to come home," and (2) "Lisa had told them that he had touched her." The second of those statements, Lisa's grandparents' statement that Lisa said Kevin had touched her, was admissible at trial because it was a statement made by a declarant (Lisa) who

15

testified at trial, the statement was "consistent with the declarant's [Lisa's] testimony," and it served "to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." N.H. R. EVID. 801(d)(1)(B). The central thrust of petitioner's defense at trial was just that – Lisa was lying about his having assaulted her.

The first statement, the grandparents' alleged comment that Lisa was afraid to come home, stands on the same footing as the second. The grandparents' report that Lisa was afraid to go home fairly implies a statement to that effect by Lisa herself, and that statement was also consistent with Lisa's trial testimony, and tended to rebut the defense of fabrication on her part. Thus, the challenged statement was not hearsay, N.H. R. EVID. 801(d)(1)(B), and counsel did not err in failing to object.

Even if the complained of statements qualified as objectionable hearsay, however, counsel's failure to object would not amount to ineffective assistance under Strickland v. Washington, 466 U.S. 668, 687 (1984) ("[a] claim of ineffective

assistance requires a showing that the attorney turned in a
constitutionally deficient performance that prejudiced the
defendant's substantial rights.").  It would have been entirely
reasonable for counsel to have decided not to object, given that
the victim, Lisa, directly testified at trial to the very same
facts.  The "hearsay," if it was, was at best cumulative, and
comparatively inconsequential.  Certainly no prejudice would have
resulted from counsel's failure to object to such evidence.

The testimony petitioner complains about did not constitute
hearsay (it is exempt).  Counsel did not err in failing to
object, and even if counsel should have objected, petitioner
suffered no prejudice to his federal constitutional rights.
Claim 2 is also without merit, whether considered under a
deferential or <u>de novo</u> standard.

D. Claim 3

In Claim 3, petitioner asserts that he was denied his
constitutional right to produce exculpatory evidence,
specifically, "statements from Florida Deputies who had knowledge
that defendant didn't discover [the] charges [against him] until

late 1995 and that in the presence of defendant, N.H. Officials refused extradition when Florida Deputies telephoned."  Such evidence, petitioner contends, was relevant to his motion to dismiss on speedy trial grounds and his argument that no part of the delay between his indictment in 1993 and his trial in 2000 should be attributed to him due to his lack of notice, between 1993 and 1995, as well as the State's indication, in 1995, that it had no interest in his extradition.

The petition does not describe with any specificity when or how petitioner's right to obtain or present exculpatory evidence was denied.  But in his state motion for new trial, petitioner claimed "[i]neffective assistance of counsel, based on denial of defendant's right to produce all proofs favorable in his own defense" (Mot. for New Trial ¶ 39), and further claimed that "Defense Counsel . . . failed by ignoring the defendant's request to solicit exculpating statements from Florida Law Enforcement Officers with particular knowledge of when the pending New Hampshire charges were discovered" (Mot. for New Trial ¶ 42).

Thus, at its core, Claim 3 also appears to be based on an
assertion of ineffective assistance of counsel.[1]

In order to properly analyze this issue, it is necessary to
set out, in some detail, the history of its litigation.  Prior to
trial, petitioner filed a motion to dismiss on speedy trial
grounds.  A hearing was held on October 31, 2000.  In his motion,
and at the hearing, petitioner argued that the indictments
against him were handed down after he had moved to Florida, and
that he never received the copies of those indictments the state
claimed were mailed to him in Florida in 1993.  He further argued
that he first learned about the charges against him at some point
after October of 1993, when he was detained by the Daytona,
Florida, police and was told that a New Hampshire warrant for his
arrest was outstanding, but that it was not extraditable.

---

[1] Relying upon the characterization of Claim 3 in the
petition, the Magistrate Judge understandably determined that
"[c]onstrued liberally, [Claim 3 of] the petition appears to
allege a violation under the Sixth Amendment Compulsory Process
Clause, which affords criminal defendants the right to present
competent, reliable exculpatory evidence."  But because the
gravamen of Claim 3 is that petitioner's counsel failed to
procure the evidence in question, not that the court impaired his
access to it or his ability to introduce it, Claim 3 is better
construed as alleging ineffective assistance of counsel.

At the hearing on his motion to dismiss, petitioner's counsel proceeded by offer of proof, declining to put petitioner on the witness stand, and failing to secure testimony, by affidavit or otherwise, from the Florida law enforcement officers who allegedly told petitioner that his New Hampshire warrant was not extraditable.  In a November 1, 2000, order on pending motions, the state court stated:

> Defendant's Motion to Dismiss is predicated on facts peculiarly in the knowledge of the defendant.  He neither supplied an affidavit in support of such facts nor took the witness stand to testify to such facts. After hearing from the State, an affidavit would not satisfy the Court's doubts about the accuracy of such facts.  The Court, therefore, finds that the defendant had knowledge of the pendency of these charges in New Hampshire and bears much of the responsibility for the delay.  Based on this finding, defendant's Motion to Dismiss for Lack of Speedy Trial is denied.[2]

At trial, petitioner took the witness stand, and offered the following relevant testimony:

---

[2] This quotation from the trial court's order is taken from the text of petitioner's Motion for a New Trial, filed in the Superior Court.  Neither petitioner nor respondent has submitted a copy of the actual order.  From the portion of the order quoted above, it is not clear whether the trial court found that petitioner had notice of the charges against him by mail, in 1993, or first learned of them in 1995, from the Daytona police.

Q.   When you found out that you had charges in New
     Hampshire, was it – did you find it out in '93 or
     was it a couple of years later?

A.   It was in '95, a couple of years later.

Q.   Explain to the jury how it came to your attention
     that there were these charges in New Hampshire.

A.   A friend of mine had gotten a hotel room out in
     Daytona Beach for a party at a nightclub on Main
     Street and after the party, upon walking back to
     the hotel, I had some words with a police officer
     and was detained and he checked my ID.

Q.   Did he tell you that there were – that New
     Hampshire had, like, a warrant or something for
     you?

A.   He simply told me to sit down and he went into a
     cube – small cubicle office off from the waiting
     room and made a phone call.

Q.   And what happened during that phone call?

A.   I heard him talking to some officials in New
     Hampshire and –

. . .

A.   He made an official call to find out about a
     warrant that apparently was existing on a data
     base.  When he checked my ID, all I heard him say
     was, so you don't want him, do you?  He says, I've
     got him here in my waiting room.  You don't want
     him?  And he says, okay.  I'll let him go, and he
     hung up the phone and I left the police station.

Q.   Did you find out what that was about.

A.   He wouldn't tell me what it was.

    Q.   Did you have – did you find out whether it was a
         felony or not or –

    A.   Oh.  Well, the next day when I went back home, the
         Deputy Sheriff – I asked him – I told him what had
         happened and asked him if he could check on what
         happened and, you know, why had the police officer
         called up to New Hampshire.  And he checked on it
         for me and said that there was a felony assault
         warrant in New Hampshire but it was
         nonextraditable.

(Trial Tr. II at 49–51.)  After he was convicted, petitioner

renewed his motion to dismiss on speedy trial grounds, and the

motion was argued at a hearing on February 23, 2001.  The motion

was denied (in an order that neither party has filed).


    Both the pre-trial denial of petitioner's motion to dismiss

for lack of speedy trial and the post-trial denial of

petitioner's renewed motion were raised in his first notice of

appeal, but neither issue was briefed.  Consequently, both issues

were deemed forfeited by the New Hampshire Supreme Court.  In his

post-appeal motion for a new trial, petitioner charged his trial

counsel with ineffective assistance for failing to procure

statements from Florida law enforcement officers for use at his

pre-trial motion hearing (Mot. for New Trial ¶¶ 39–44) and for

failing to resubmit that motion when it was improperly denied

(Mot. for New Trial ¶¶ 45-51).  In his second notice of appeal, which was declined, petitioner contended that the Superior Court erred in denying his motion for a new trial.  But the speedy trial issue was previously deemed forfeit.  Petitioner offers no basis (e.g., cause and prejudice) upon which this court should review his procedural default.

In its order on petitioner's motion for a new trial, the Superior Court considered, and rejected, petitioner's related claim of ineffective assistance of counsel:

> Although not merited by the issues raised by defendant's motion in light of the above findings [concerning petitioner's lack of credibility and the lack of corroborating evidence for any of his claims], the court has reviewed the entire trial transcript and finds that trial counsel far exceeded the minimum level of competence required.  Counsel vigorously represented defendant in the face of substantial, credible evidence of guilt.

Hokenstrom II, slip op. at 2.  The Superior Court's order did not specifically mention trial counsel's performance in litigating the speedy trial issue, but petitioner did fairly present that ineffective assistance claim.  Accordingly, this court will assume petitioner's ineffective assistance claim was adjudicated

23

on the merits and is entitled to the deferential AEDPA standard
of review.  See Mercadel v. Cain, 179 F.3d 271, 274 (5th Cir.
1999) (citation omitted) ("the question of whether a state
court's decision is an adjudication on the merits turns on 'the
court's disposition of the case – whether substantive or
procedural'"); Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir.
2001) ("Nothing in the phrase 'adjudicated on the merits'
requires the state court to have explained its reasoning
process.").

        The scope of this court's review is now familiar: "when the
state court has addressed the federal constitutional issue, it is
its ultimate outcome, and not its rationalization, which is the
focus."  DiBenedetto v. Hall, 272 F.3d 1, 6 (1st Cir. 2001)
(citing Hurtado v. Tucker, 245 F.3d 7, 20 (1st Cir. 2001)).
Moreover:

        [W]here the state court has not articulated its
        reasoning, federal courts are obligated to conduct an
        independent review of the record and applicable law to
        determine whether the state court decision is contrary
        to federal law, unreasonably applies clearly
        established law, or is based on an unreasonable
        determination of the facts in light of the evidence
        presented.  See Aycox v. Lytle, 196 F.3d 1174, 1177–78
        (10th Cir. 1999) ("we must uphold the state court's

24

summary decision unless our independent review of the
record and pertinent federal law persuades us that its
result contravenes or unreasonably applies clearly
established federal law, or is based on an unreasonable
determination of the facts in light of the evidence
presented"); Schaff v. Snyder, 190 F.3d 513, 523 (7th
Cir. 1999); Delgado v. Lewis, 181 F.3d 1087, 1091 n.3
(9th Cir. 1999), vacated on other grounds, 528 U.S.
1133 (2000); accord Gordon v. Kelly, No. 98-1905, 2000
WL 145144, at *12 (6th Cir. Feb. 1, 2000).  That
independent review, however, is not a full, de novo
review of the claims, but remains deferential because
the court cannot grant relief unless the state court's
result is not in keeping with the strictures of the
AEDPA.

Harris v. Stovall, 212 F.3d 940, 943 (6th Cir. 2000) (parallel

citations omitted).


Here, then, the question is whether, under the deferential

AEDPA standard of review, the state court's decision – that

petitioner's counsel did not provide ineffective assistance of

counsel when he failed to procure testimony or affidavits from

Florida law enforcement officers in support of the motions to

dismiss on speedy trial grounds – is sustainable.  That inquiry,

in turn, implicates the four-part test for analyzing potential

speedy trial violations, which requires consideration of: "(1)

the length of the delay; (2) the reasons for the delay; (3) the

defendant's assertion of his speedy trial right; (4) and the

prejudice to the defendant caused by the delay." United States v. Maxwell, 351 F.3d 35, 40 (1st Cir. 2003) (quoting Barker v. Wingo, 407 U.S. 514, 530 (1972)).

Under the familiar two-part test established by Strickland v. Washington, 466 U.S. 668 (1984), "[a] claim of ineffective assistance requires a showing that the attorney turned in a constitutionally deficient performance that prejudiced the defendant's substantial rights." United States v. Moran, 393 F.3d 1, 10 (1st Cir. 2004) (citing Strickland, 466 U.S. at 687). Prejudice, in turn, consists of a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Allison v. Ficco, 388 F.3d 367, 369 (1st Cir. 2004) (quoting Strickland, 466 U.S. at 694). Thus, in order to prevail on Claim 3, petitioner would have to prove that his attorney's decision not to procure testimony from Florida law enforcement officials "fell below an objective standard of reasonableness," Rivera Alicea v. United States, 404 F.3d 1, 3 (1st Cir. 2005) (citation omitted), and that but for counsel's failure to procure such evidence, there is a reasonable probability that the court would have granted

petitioner's motion to dismiss on speedy trial grounds, <u>Rivera</u>
<u>Alicea</u>, 404 F.3d at 3 (citation omitted).

Respondent argues that Claim 3 must be dismissed because,
<u>inter alia</u>, the allegedly exculpatory evidence is not exculpatory
at all.  In respondent's view:

> As for the alleged "exculpatory" evidence, at best
> it consisted of evidence that, while he was living in
> Florida, Hokenstrom indicated to some local officers
> that he had no knowledge of any pending indictment.
> Such evidence cannot be deemed exculpatory, even in
> connection with a speedy trial motion, because it rests
> entirely on Hokenstrom's credibility.  It follows that
> any failure to pursue this issue by trial or appellate
> counsel was not error.

(Resp't's Mot. Summ. J. at 18–19 (citation omitted).)  The
problem with respondent's position, however, is that petitioner
alleges that the Florida law enforcement officers would be able
to provide evidence relevant to two different factual matters:
(1) when he first learned of the New Hampshire charges; and (2)
that when he first learned of those charges, he was also informed
(by Florida law enforcement officers in contact with New
Hampshire officials) that New Hampshire had no interest in
extraditing him, thus leading him to believe that the charges

27

against him were minor.  Plainly, Florida law enforcement
officers could not have provided evidence as to petitioner's
knowledge, but could have testified about what information they
gave petitioner, based upon their conversations with New
Hampshire officials.

As noted, the Florida officials were competent to testify
about what they told petitioner.  That evidence would have been
relevant in establishing petitioner's knowledge in 1995.
Petitioner's knowledge or state of mind are directly relevant to
the third Barker factor, assertion of his speedy trial right.
See Doggett v. United States, 505 U.S. 647, 653 (1992) ("Were
this true [i.e., that Doggett knew about his indictment years
before he was arrested], Barker's third factor, concerning
invocation of the right to a speedy trial, would be weighed
heavily against him.").  Petitioner, however, argues that the
Florida testimony, and in particular evidence tending to show
that New Hampshire law enforcement officials regarded the charges
against him as non-extraditable, is relevant to establishing,
under the second Barker factor, that the gap between indictment

and trial is largely attributable to the State, due to its lack of diligence in attempting to bring him to trial.

The government may be charged with responsibility for a pre-trial delay when, for example, a defendant is unaware of the charges against him or her.  See Doggett, 505 U.S. at 653-54. Similarly, the government may be charged with responsibility for the delay when a defendant, incarcerated out of state, knows of the charges against him or her, but is unable to press a demand for a speedy trial due to the charging state's failure to lodge a detainer during the course of the defendant's out-of-state incarceration.  See RaShad v. Walsh, 300 F.3d 27, 36-38 (1st Cir. 2002).  But here, petitioner both knew of the charges against him, and was free to come to New Hampshire to demand a speedy trial.  Given those facts, any statement by New Hampshire officials that the New Hampshire charges were non-extraditable is not significant in the context of analyzing the alleged denial of Hokenstrom's right to a speedy trial.

Moreover, if Florida law enforcement officers had testified that they told Hokenstrom that New Hampshire law enforcement

29

officials considered his charges nonextraditable,[3] any such
testimony (which would necessarily include testimony that
Hokenstrom was told of the charges against him) would have
weighed heavily against Hokenstrom under the assertion-of-the-
right factor of the Barker test.  "Although a defendant does not
waive his constitutional right to a speedy trial by failing to
assert it at a time when the state could have nipped the
violation in the bud, his failure to do so means that he must
make a much stronger showing on the other factors in order to
succeed in his claim."  RaShad, 300 F.3d at 34 (citing Barker,
407 U.S. at 532).  Here, in addition to its negligible effect on
the responsibility-for-delay factor, the Florida testimony would
have substantially strengthened the State's argument – and the

---

[3] Petitioner's claim is further weakened by the fact that he
has not produced the evidence he contends his trial counsel
should have introduced, i.e., testimony that would have been
offered by Florida law enforcement officers.  Absent an affidavit
from those officers disclosing the content of the testimony they
would have offered, its relevance and likely impact cannot be
evaluated, which makes it difficult, if not impossible, for this
court to rule that failure to procure that testimony constituted
ineffective assistance.  See Neverson v. Farquharson, 366 F.3d
32, 45 (1st Cir. 2004) (denying ineffective assistance claim
based upon failure to procure expert testimony in part because
petitioner "offered nothing but 'unsubstantiated speculation that
. . . expert testimony on those issues could have been obtained"
and "ha[d] not offered any evidence of what that person would
have said . . .").

state court's conclusion – that Hokenstrom knew of the charges against him, yet purposely decided to sit on his speedy trial right between 1995 and 2000.  See RaShad, 300 F.3d at 40 ("Courts should be very hesitant to reward a defendant who . . . has gambled with his speedy trial rights and lost.") (citing Look v. Amaral, 725 F.2d 4, 6–8 (1st Cir. 1984); United States v. Aguirre, 994 F.2d 1454, 1457 (9th Cir. 1993) ("The Speedy Trial Clause primarily protects those who assert their rights, not those who acquiesce in the delay . . .)).

Given that the proposed Florida testimony was as likely to undermine petitioner's claim as support it, and given that "[t]he decision whether to call a particular witness is almost always strategic," Horton v. Allen, 370 F.3d 75, 86 (1st Cir. 2004) (citation omitted); see also Neverson, 366 F.3d at 45), the state court decision rejecting petitioner's ineffective assistance claim relative to his speedy trial motion was neither contrary to Strickland, nor an unreasonable application of that (or any other) Supreme Court decision.  Counsel did not fall below the expected standard in providing representation, and counsel's

decision in this respect did not result in any prejudice to the petitioner.

Finally, if, either individually or in combination, the Superior Court's failure to specifically discuss trial counsel's litigation of the speedy trial issue and/or the Supreme Court's decision to decline petitioner's second appeal, require application of the <u>de</u> <u>novo</u> standard of review, the result would be the same.  Under a <u>de</u> <u>novo</u> review, this court would find that petitioner's counsel did not provide ineffective assistance by declining to procure the referenced evidence, and certainly no substantive prejudice occurred as a result of counsel's declining to pursue the course petitioner suggests.

<u>E. Claim 6</u>

The gist of Claim 6 is petitioner's assertion that he was denied his Sixth Amendment right to confrontation by the trial court's precluding him from cross-examining the victim concerning a pending juvenile delinquency petition brought against her shortly before trial (charging her with stealing from her employer).  In petitioner's view, the theft charge was admissible

32

for the purpose of impeaching the victim's credibility.  The
trial court disagreed, ruling that the allegation of theft was
not probative of the witnesses's truthfulness and was unfairly
prejudicial.  The New Hampshire Supreme Court affirmed, holding
that "evidence that the victim allegedly stole money from her
employer was not probative of her credibility regarding the
events surrounding the sexual assaults."  Hokenstrom I, slip op.
at 3.  Respondent moves for summary judgment on Claim 6.
Petitioner does not object, but instead, in his motion for
summary judgment on Claim 1, asks the court to "waive" Claim 6 in
the event of a favorable ruling on Claim 1.

     While petitioner asserts that the trial court's evidentiary
ruling denied him his Sixth Amendment confrontation right, he
does not explain how the court's ruling was either contrary to or
an unreasonable application of controlling Supreme Court
precedent.  At trial, petitioner relied upon Davis v. Alaska, 415
U.S. 308 (1974), for the proposition that the juvenile record
(consisting of a conviction for burglary) of an eyewitness for
the prosecution was probative of his credibility and therefore
admissible.  Davis, however, stands for a different proposition,

33

namely, that the witness's status as a juvenile probationer was probative of a potential bias that may have induced him to make a "hasty and faulty identification of petitioner to shift suspicion away from himself as one who robbed the Polar Bar," id. at 311, and that may have created a situation in which the petitioner "might have been subject to undue pressure from the police and made his identifications under fear of possible probation revocation."   Id.

Because the trial court's decision not to allow cross-examination concerning the victim's juvenile delinquency petition fell within its broad discretion, see N.H. R. EVID. 609(d), and the New Hampshire Supreme Court's affirmance of that ruling was not contrary to nor an unreasonable application of Davis, or any other Supreme Court decision, Claim 6 provides no basis for habeas relief and, consequently, is dismissed.

F. Claim 8

In Claim 8, petitioner asserts that his right to due process of law was violated because his ability to appeal his conviction was impaired by various deliberate alterations to the trial

34

transcript, including re-writing of the testimony of the State's expert witness, Dr. Gladstone, deletion of an improper jury instruction delivered just before the opening statements, certain testimony of the victim's mother, and all the questions from the jury and the court's responses to those questions.  Respondent argues that Claim 8 should be dismissed because it is not supported by affidavits or any other sort of corroborating evidence.  As noted, petitioner has not objected to summary judgment on Claim 8, asking, instead, for dismissal without prejudice in the event of a favorable ruling on his motion for summary judgment on Claim 1.

Petitioner vigorously argued the issue underlying Claim 8 during the hearing on his motion for a new trial, at which the following exchange took place:

> THE COURT:  You're telling me that the transcriptionist, the court reporter, deliberately deleted something from this transcript?
>
> MR. HOKENSTROM:  Yes, several things, and a portion of –
>
> THE COURT:  And why would she do that when that would cost her her job if she was found to be doing that?

35

        MR. HOKENSTROM:  Well, not every person that is
    convicted, A, has the intelligence to put a document
    like this together and, B, ever gets access to the
    transcripts in the first place.

        THE COURT:  No, but I have access to the
    transcripts.  I've seen Ms. Gelinas' transcripts
    numerous times and if I found she was falsifying or
    deleting things from transcripts, she wouldn't be
    working here anymore, and the same goes for Judge
    McGuire and her reporter.  We simply wouldn't tolerate
    that, Mr. Hokenstrom.


(Mot. for New Trial Tr. at 17.)[4]

---

    [4] The court went on to state, in its order denying
petitioner's motion for a new trial:

    All of defendant's other claims [in addition to his
    claim of prosecutorial misconduct based upon soliciting
    perjury] are based entirely on his personal account of
    the events of the trial and are not supported by any
    corroborating evidence.  Defendant goes so far as to
    claim that the trial transcripts are incomplete and/or
    altered to protect judicial misconduct.  Both McGuire,
    J. and the undersigned justice, as well as the jury,
    have taken issue with this defendant's credibility.
    (See orders on Motion to Dismiss and Renewed Motion to
    Dismiss.)  In those hearings the defendant took
    positions relative to certain issues which were
    contrary to evidence in which the court had a high
    degree of confidence causing both justices to conclude
    the defendant was not credible.  Defendant's new claim
    of altered/edited transcripts only bolsters the prior
    conclusion that defendant's testimony is not worthy of
    belief.

Hokenstrom II, slip. op. at 1-2.

                                36

Given the nature of Claim 8 and the way it has been presented, it would appear to be an "unreasonable determination of the facts" claim under 28 U.S.C. § 2254(d)(2).  That is, petitioner seems to claim that the state court unreasonably determined that the trial transcripts had not been altered. However, because petitioner presented the state court with no factual basis for his claim other than his own generalized assertion (determined by the state court to be unreliable),[5] Claim 8 is baseless, and must be dismissed.

G. Claim 9

In Claim 9, petitioner asserts that his right to a fair trial was violated by the judge's insistence that the trial be conducted in two days, in order not to conflict with a previously scheduled social event.  Petitioner raised this issue in a motion to set aside the verdict, which was denied, and he listed denial of the motion to set aside the verdict as issue number seven in

---

[5] In fact, the limited bit of actual evidence petitioner does provide tends to cut against him.  In a letter dated February 27, 2003, one of petitioner's trial attorneys told him: "As I explained to you before, I do not have a photographic memory and cannot quote exactly my questions and Dr. Gladstone's answers during that hearing."

his first notice of appeal.  Subsequently, petitioner forfeited

the issue by declining to brief it.


Because petitioner forfeited the issue during his direct

appeal, the New Hampshire Supreme Court's decision to affirm his

conviction "rests on the adequate and independent state ground of

procedural default."  McCambridge v. Hall, 303 F.3d 24, 34 (1st

Cir. 2002).  As the court of appeals for this circuit said in

Horton:

> Generally, habeas review is precluded when a state
> court reaches its decision on an independent and
> adequate state law ground.  See Coleman v. Thompson,
> 501 U.S. 722, 729 (1991).  A state court's decision to
> find a forfeiture, based on the defendant's failure to
> object at trial, is an independent and adequate ground
> for decision so long as the state court consistently
> applies its contemporaneous objection rule and has not
> waived it in the particular case by basing the decision
> on some other ground.  See Burks v. Dubois, 55 F.3d
> 712, 716 (1st Cir. 1995). . . .
> Because the SJC resolved [the petitioner's] claim
> on state law grounds, the habeas court may consider the
> claim if [he] establishes "cause and prejudice" with
> respect to the procedural default.  See Dretke v.
> Haley, 541 U.S. 386 (2004); Coleman, 501 U.S. at 750.
> To satisfy the cause portion of the test, [the
> petitioner] must show "that some objective factor
> external to the defense impeded counsel's efforts to
> comply with the State's procedural rule."  Murray v.
> Carrier, 477 U.S. 478, 488 (1986).  One way to
> establish cause is to demonstrate that defense

counsel's inaction constituted ineffective assistance
of counsel.

370 F.3d at 80-81 (footnote and parallel citations omitted).  The
New Hampshire Supreme Court consistently applies the "brief or
waive" rule and did not waive that rule in this case.[6]

    Thus, in order for habeas review of Claim 9 not to be
precluded, petitioner must establish that appellate counsel's
decision not to brief the issue of hurrying the trial constituted
ineffective assistance of counsel.  It did not.

---

    [6] In his post-appeal motion for a new trial, petitioner
devoted considerable attention to appellate counsel's decision to
brief only the confrontation/impeachment issue raised here as
Claim 6.  The Superior Court rejected petitioner's claim of
ineffective assistance of appellate counsel, explaining:

    The court further finds that appellate counsel's
    decision to limit the issues briefed on appeal to the
    issue he believed to have a substantial likelihood of
    success was a tactical decision in which the defendant
    concurred.  He cannot now after substantial reflection
    complain that it was a bad decision.  Further, the
    court does not accept as true any of defendant's
    assertions about communications with appellate counsel
    as it is clear that defendant will distort the truth to
    effect his own purposes.

Hokenstrom II, slip op. at 2.

"[T]he process of winnowing out weaker claims on appeal and
focusing on those more likely to prevail, far from being evidence
of incompetence, is the hallmark of effective appellate
advocacy."  Burger v. Kemp, 483 U.S. 776, 784 (1987) (quoting
Smith v. Murray, 477 U.S. 527, 536 (1986)) (internal quotation
marks omitted).

Petitioner's assertion that he was prejudiced by the trial
judge's alleged hurrying of the trial was an exceptionally weak
claim.  In New Hampshire, "[t]he law . . . is that the manner and
timing of the trial of all or part of the issues in an action is
a question of justice and convenience within the discretion of
the trial judge."  Jamestown Mut. Ins. Co. v. Meehan, 113 N.H.
639, 641 (1973) (citing Dunn & Sons, Inc. v. Paragon Homes, 110
N.H. 215, 219 (1970)).  Therefore, rulings relating to the manner
and timing of trial are reviewed for abuse of discretion.  See
Jamestown Mutual, 113 N.H. at 641 (citing Eichel v. Payeur, 107
N.H. 194, 196 (1966)).  Similarly, the two specific rulings
identified in petitioner's motion to set aside the verdict as
having resulted from the trial judge's determination to finish
his trial in two days – the decision not to admit the testimony

40

of Dr. Mart and the decision not to allow impeachment of the
victim with evidence of her juvenile delinquency petition – are
both subject to review under an abuse of discretion standard.
See State v. Dahood, 148 N.H. 723, 725–26 (2002) ("we review the
trial court's rulings on evidentiary matters, including those
regarding the reliability of novel scientific evidence, with
considerable deference, and will reverse the court's decision
only if its exercise of discretion is unsustainable") (citing
State v. Hungerford, 142 N.H. 110, 117 (1997); State v. Lambert,
147 N.H. 295, 296 (2001)).  To prevail under that standard of
review, a party "must demonstrate that the court's ruling was
clearly untenable or unreasonable to the prejudice of his case."
Lambert, 147 N.H. at 296 (citing State v. Johnson, 145 N.H. 647,
648 (2000)).

     Nothing in the record suggests that the trial judge's ruling
with respect to Dr. Mart was related in any way to the trial
schedule, and, as noted earlier, the trial court's ruling
regarding impeachment of the victim fell well within its
discretion under N.H. R. EVID. 609(d).  Appellate counsel's
tactical decision not to raise or brief this weak claim did not

constitute a mistake, much less a prejudicial one.  Appellate counsel's decision to pursue a limited number of issues on appeal, and his decision not to pursue a weak discretionary trial management issue, without any apparent prejudicial effect, and one subject to abuse of discretion review, is a testament to counsel's effective appellate advocacy, and not a sign of inadequate assistance.

Because appellate counsel's decision not to pursue the trial-hurrying issue did not constitute ineffective assistance of counsel, petitioner cannot establish cause for his procedural default.  Accordingly, the state court's decision on that issue rests on independent and adequate state law grounds, thus precluding federal habeas review.

H. Claim 10

In Claim 10, petitioner asserts that his conviction resulted from the ineffective assistance of trial counsel in litigating the issues raised here in Claims 1, 2, 3, 6, 8, and 9.  Because the legal theories advanced in those claims are baseless, petitioner's trial counsel did not provide ineffective assistance

by failing to litigate them, or by litigating them unsuccessfully, and the state court's ruling to that effect is easily sustained under either AEDPA's deferential standard of review, or under a <u>de novo</u> standard.  Accordingly, Claim 10 is also dismissed.

### Conclusion

For the reasons given, petitioner's motion for partial summary judgment (document no. 20) is denied, respondent's motion for summary judgment (document no. 19) is granted, and the petition is dismissed.  The clerk of the court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

September 28, 2005

cc:  Kevin Hokenstrom, pro se
     Nicholas P. Cort, Esq.